IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CHARLES S. SCARBOROUGH, ANNIE SCARBOROUGH, DARRELL THOMAS, SUSAN THOMAS, SAM LEWIS, GENA LEWIS, CHRISTIE MCCULLOUGH, DENNIS FRY, SAMANTHA FRY, PAIGE CHRISTENBERRY MONCIER, MEREDITH CHRISTENBERRY, and TENNGREEN LAND CONSERVANCY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ JURY TRIAL DEMANDED |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NORMAN MITCHELL KEMMER II d/b/a SPARTAN HUNTING LODGE and d/b/a SPARTAN HUNTING PRESERVE, | ) ) ) ) ) ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiffs seek recourse for Defendant Spartan Hunting Lodge's pollution of Whites Creek, its tributaries, and the Tennessee River watershed.

Prior to its pollution by Defendant, Whites Creek had been designated as an Exceptional Water of Tennessee. It was a pristine, vibrant, scenic, and ecological treasure; where native plant and animal species thrived, children swam, and people paddled kayaks and canoes. Defendant's unlawful discharges of contaminants have degraded Whites Creek, and other waters associated with it so as to render them not merely unsightly, but unsafe.

Yet despite repeated efforts to secure the Hunting Lodge's cooperation in mitigating its environmental impact, Defendant has refused to take any form of meaningful correctional action. Defendant has violated and continues to be in violation of the Clean Water Act—allowing pollutants to discharge from his property into waters of the United States. Defendant has also violated and continues to be in violation of the Resource Conservation and Recovery Act by creating an imminent and substantial endangerment to health and the environment and by failing to manage the solid waste it generates. Defendant is also guilty of Tennessee common law violations, including trespass and nuisance, and in violation of the Tennessee Water Quality Control Act.

## THE PARTIES

1) Defendant Norman Mitchel Kemmer II owns and operates a for-profit hunting lodge, doing business under the names Spartan Hunting Preserve and Spartan Hunting Lodge (at times referred to collectively herein as the "Hunting Lodge"), that provides its patrons with meals and lodging, and guided hunting of exotic game—which are released to be shot after being fed and fattened in fenced pens—and on-site butchering and processing of the animals killed by patrons of the lodge. The accumulated excrement, offal, and other by-products of Defendant's Hunting Lodge are channeled into Whites Creek and the waters associated with it.

2) Defendant Mitchell Kemmer II resides at 389 Kemmer Heights Drive, in Cumberland County, Grandview Tennessee, where he owns and operates Spartan Hunting Lodge and/or Spartan Hunting Preserve and its associated properties.

3) Discharge from Defendant's Hunting Lodge pollutes its adjacent waters and properties with toxic bacteria, foul smelling waste, and contaminants. Defendant discharges this pollution into Whites Creek and its associated waters, including Wildcat Creek, Fall Creek,

Piney Creek, Otter Creek, Whites Creek, Watts Bar Lake, and the Tennessee River (referred to herein, collectively as the "polluted waters").

4) Plaintiffs are neighbors, landowners, and environmental land trusts and/or organizations whose use, enjoyment, and preservation of the now-polluted waters, including Whites Creek and the land it abuts, has been adversely impacted by Defendant's repeated and ongoing failure to responsibly manage the discharge of pollutants from its Hunting Lodge properties.

5) Plaintiffs Charles S. Scarborough and Annie Scarborough (the "Scarboroughs" or the "Scarborough Plaintiffs") reside in Roane County, Tennessee, and own property adjacent to and downstream of Defendant's Hunting Lodge. The Scarboroughs also hold easements to and across a portion of the waters polluted by Defendant. The Scarboroughs have used, and desire to be able to use again in the future, these waters for recreational, education, charitable, and aesthetic purposes. Their property and easement interests, as well as their use and enjoyment of the polluted waters, including Whites Creek and the land it abuts, have been and continue to be adversely affected by Defendant's unlawful conduct.

6) Plaintiffs Darrell Thomas, Susan Thomas, Sam Lewis, Gena Lewis, Christie McCullough, Dennis Fry, Samantha Fry, Paige Christenberry Moncier, and Meredith Christenberry are individuals who also own and occupy nearby properties; their use and enjoyment of which is adversely affected by Defendant's unlawful discharge of pollutants.

7) Plaintiff TennGreen Land Conservancy is a not-for-profit organization dedicated to the preservation and ethical stewardship of land and waters of the State of Tennessee. It holds conservation easements adversely affected by the pollution and degradation of the polluted waters and the land through which they flow. It has members who use and enjoy Whites Creek,

the polluted waters, and the lands adjacent to them, who continue to be regular visitors of that land and waters, and who rely on the stewardship of TennGreen Land Conservancy of that land and waters.

## STATUTORY AND REGULATORY BACKGROUND

8) This is a citizen's suit brought pursuant to the provisions of Section 505(a)(1) of the Federal Water Pollution Control Act, also known as the Clean Water Act (hereinafter "CWA"), as amended, 33 U.S.C. § 1365(a)(1), and Section 7002 of the Resource Conservation and Recovery Act (hereinafter "RCRA") 42 U.S.C. § 6972(a)(1)(A). This citizen's suit seeks to redress Defendant's violations of the CWA, the Tennessee Water Quality Control Act of 1977, as amended, § 69-3-101, *et seq.*, and RCRA. Defendant's violations include unpermitted discharges of pollutants into waters of the United States, the creation of an imminent and substantial endangerment to health and the environment, and the unlawful operation of an open dump.

9) Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any *inter alia* pollutant from a point source to waters of the United States except in compliance with, *inter alia*, a National Pollutant Discharge Elimination System ("NPDES") permit issued under Section 402, 33 U.S.C. § 1342. A "point source" includes any discernible, confined, and discrete conveyance, such as a pipe ditch, channel, culvert, or concentration animal feeding operation. 33 U.S.C. § 1362(14). Defendant has, without limitation, by use of holding ponds, culverts, inboard-ditches, and the conduct of his operations, has turned even Whites Creek itself into a point source for discharge of pollutions into downstream waterways of the United States.

10) The State of Tennessee has been delegated the authority to implement the permitting programs of the CWA by the United States Environmental Protection Agency

4

("EPA"), including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b). Under the Tennessee Water Quality Control Act, Tenn. Code Ann. § 69-3-108, it is unlawful for any person to discharge pollutants or otherwise alter the physical, chemical, radiological, biological, or bacteriological properties of state waters without a permit. The Tennessee Department of Environment and Conservation ("TDEC") administers the NPDES permitting program, both individual and general permits, under delegated authority from EPA. Persons discharging directly into state surface waters must obtain an NPDES discharge permit from TDEC.

11) The CWA authorizes citizen suits against any person alleged to be in violation of an effluent standard or limitation or order issued by the EPA or the State of Tennessee with respect thereto. 33 U.S.C. § 1365(a).

12) RCRA authorizes citizen suits against any person contributing to the handling, storage, treatment, transportation, or disposal of any solid or hazardous waste that may present an imminent and substantial endangerment to health or the environment, 42 U.S.C. § 6972(a)(1)(B), and suits against any person alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to RCRA. 42 U.S.C. § 6972(a)(1)(A). RCRA prohibits the open dumping of solid waste. 42 U.S.C. § 6945(a).

**JURISDICTION AND VENUE**

13) This Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 because they arise under laws of the United States.

14) This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' federal claims that they form part of the same case and controversy.

15) This Court has general personal jurisdiction over Defendant Norman Mitchell Kemmer II because he is a resident and citizen of the State of Tennessee.

16) Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this District, affected waters are located within this District, and Defendant resides in and/or conducts business within this District.

17) Pursuant to 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. Part 135, and 42 U.S.C. § 6972(b)(1)(A), Plaintiffs provided, on October 15, 2025, Defendant, the Administrator of the EPA, and the Commissioner of TDEC with written notice of the violations alleged herein, at least sixty (60) days prior to the commencement of this action. The Notice Letter is attached hereto as "**Exhibit A**."

18) The violations alleged herein are ongoing and/or reasonably likely to recur absent judicial relief. Repeated testing has confirmed the ongoing pollution of the affected water and Defendant has steadfastly refused to remediate its unlawful discharge of pollutants into the water or deposits onto adjacent land.

## FACTUAL ALLEGATIONS

19) Defendant operates a for-profit hunting lodge ("Hunting Lodge"), doing business under the names "Spartan Hunting Lodge" and "Spartan Hunting Preserve." The Hunting Lodge imports, feeds, and permits breeding of wild non-native animals kept in tightly constricted conditions in high fenced pens pending release for exotic wild game hunting and to be shot by patrons of the lodge.

20) Among the waters polluted by Defendant ("the polluted waters") is a stream designated both as an Exceptional Water of Tennessee and an Outstanding Water Resource of

the State of Tennessee. Its waters feed the watershed of Watts Bar Lake, a part of the Tennessee River system and a navigable water of the United States.

21) The individual Plaintiffs' properties abut or are proximate to waters polluted by Defendant's Hunting Lodge, including Wildcat Creek, Whites Creek and other waters. Plaintiff TennGreen Land Conservancy holds conservation easements adversely affected by Defendant's pollution of Whites Creek and associated waters and have beneficiaries whose use and enjoyment of the polluted waters, including Whites Creek, land that abuts it, and waters downstream of it, is adversely affected by Defendant's unlawful discharge of pollutants.

22) Spartan Hunting Lodge and/or Spartan Hunting Preserve is in the business of providing food, lodging, and other goods and services to patrons who come there to shoot exotic non-domestic animals. The pollution it discharges is produced by the keeping and killing of wild pigs, wild sheep, fallow deer, and other exotic animals the Hunting Lodge keeps penned up, crammed into close quarters that are as unsanitary as they are unsightly. For example, the photograph attached as "**Exhibit B**" shows one of the over-crowded pens where animals are held, and from which a guide releases a few animals during hunts so that a hunting party can "spot and stalk" them.

23) In these enclosures, the animals' eliminated waste accumulates on the ground and in ponds in concentrations that cannot be expected to be absorbed into the soil as natural waste until it is carried away by water from Defendant's drainage infrastructure or otherwise channeled away as polluted water.

24) Manure and other pollutants are accumulated on-site at the Defendant's premises in concentrations in excess of what would be permissible under, and without regard to, any feasible or reasonable fertilization or soil-conditioning plan.

7

Case 2:26-cv-00005   Document 1   Filed 01/14/26   Page 7 of 16 PageID #: 7

25) Defendant's drainage infrastructure directs water flows across its property, directing and collecting manure and debris off the property and into the polluted waters, including Whites Creek.

26) Defendant also diverts creek water and commingles it with stormwater and waste-laden runoff in retaining ponds that discharge polluted water through culverts and swales from Defendant's property and across Paige Moncier's property, Meredith Christenberry's property, and the Scarborough Plaintiffs' easement into the polluted waters, including Whites Creek.

27) Unlawful discharges from Defendant's property through culverts, swales, and other means have been confirmed. Among other things, fences within the animal enclosures have been dammed with debris and waste, creating pools of polluted water returning to Whites Creek. Drainage pipes discharge pond water downslope onto Mr. Scarborough's easement and back to Whites Creek.

28) Laboratory testing at the boundary of Defendant's property has repeatedly confirmed that these discharges are contaminated with toxic levels of pollutants including E. coli bacteria, nitrites, nitrates, and phosphates.

29) Water sampling, examples of the documentation of which are attached hereto as **Exhibit C** and **Exhibit D**, has repeatedly verified the contamination of the polluted waters, including Wildcat Creek, with toxic levels of bacteria and fecal matter discharged from point sources on Defendant's property. One laboratory technician described the sample he tested as "turd soup."

30) Whites Creek, for example, at a point called the Blue Hole, a popular swimming spot near Defendant's property, has been determined by laboratory water quality testing to

8

Case 2:26-cv-00005    Document 1    Filed 01/14/26    Page 8 of 16 PageID #: 8

contain up to sixteen times the minimum level considered safe for recreational use, or even human contact.

31) Wildcat Creek, originating on Defendant's property and contaminated by effluent from Defendant's property, has been tested to be polluted with E. coli in excess of 22,000 times the concentration considered safe for human contact.

32) On July 1, 2025, Plaintiffs obtained water samples from the polluted waters from multiple locations, including Wildcat Creek, and submitted them for laboratory analysis. The results confirmed severe contamination: E. coli counts at Wildcat Creek exceeded 2.9 million CFU ("colony forming units") per 100 mL and nitrate concentrations of 23 mg/L—far above levels deemed safe for human contact and levels associated with unpolluted waters, as demonstrated by samples taken upstream of Defendant's Hunting Lodge. A copy of the report is attached as **Exhibit C**.

33) More recently, on December 19, 2025, after Plaintiffs had already provided their statutory notice of intent to sue, water samples were collected from Wildcat Creek. The results confirmed that extreme contamination is ongoing: E. coli levels exceeded the laboratory's measurable range, with a minimum count more than twice the level considered unsafe for human contact. A copy of the report is attached as **Exhibit D**.

34) Fall Creek, Piney Creek, and Whites Creek have been severely degraded by the Hunting Lodge's operations and function as point source channels to direct pollution further downstream. Unprecedented algae growth, the presence of brown sludge coating the rocks and riverbanks, and the absence of native species typical for the area affected, evidences the environmental degradation of this formerly pristine natural area due to Defendant's misconduct.

35) Local landowners, visitors, kayakers, fishermen, and nature enthusiasts have noted the putrid smell, the foul color of the water, and the absence of native fauna in the polluted waters.

36) Due to Defendant's contamination of Whites Creek, both the institutional and individual Plaintiffs have been forced to curtail their use and enjoyment of the area, including swimming, recreation, fly fishing, snorkeling, and annual fundraising events.

37) Defendant lacks an NPDES permit authorizing discharges from point sources on the property. The ongoing discharge of pollutants from point sources on Defendant's property into the polluted waters is unlawful under both federal and Tennessee law.

38) Defendant has refused to implement management practices to contain, treat, or properly apply animal waste on its land at agronomic rates.

39) Defendant's discharges occur during dry weather as well as wet weather. Defendant's discharges are caused or exacerbated by oversaturation with manure, offal, other wastes, and Defendant's intentional water management, and are not limited to agricultural stormwater.

40) Defendant's unlawful discharges are ongoing and likely to recur absent injunctive relief.

41) Defendant has persisted in their unlawful conduct, despite repeated requests to abate it. Defendant's unlawful conduct and violations of applicable law, as specified in the Counts of this Complaint set forth herein, and below, have been and continue to be knowing, willful, intentional, and/or reckless.

# COUNT I
## VIOLATIONS OF THE CLEAN WATER ACT
### (33 U.S.C. §§ 1311, 1342, 1362, 1365)

42) Plaintiffs reallege and incorporate by reference the preceding paragraphs.

43) Defendant has discharged and continues to discharge pollutants, including but not limited to animal waste, manure, and associated waste from point sources including retaining ponds, culverts, pipes, ditches, channels, swales, Otter Creek, and Whites Creek, into the polluted waters, including Whites Creek itself, a water of the United States, and downstream from there to Watts Bar, a navigable waterway of the United States.

44) Defendant has no NPDES permit authorizing these discharges. Each discharge from a point source to navigable waters without authorization is a separate and independent violation of Section 301(a) of the CWA.

45) Defendant's discharges do not qualify for agricultural stormwater discharge exemption because, *inter alia*, (a) Defendant's operations are not limited to agricultural activity; (b) the discharges occur during dry weather and are caused by Defendant's collection, concentration, and conveyance of polluted water; and (c) the pollution is primarily caused by oversaturation with manure rather than rainfall.

46) Defendant is in violation of an effluent standard or limitation under the CWA, 33 U.S.C. § 1365(f), and these violations are ongoing and/or are reasonably likely to recur.

47) Plaintiffs are entitled to all relief for Defendant's violations of the Clean Water Act provided for in the Clean Water Act, 33 U.S.C. § 1365, and/or otherwise available at law or at equity in light of these violations.

## COUNT II
## RESOURCE CONSERVATION AND RECOVERY ACT
## IMMINENT AND SUBSTANTIAL ENDANGERMENT
## (42 U.S.C. § 6972(a)(1)(B))

48) Plaintiffs reallege and incorporate by reference the preceding paragraphs.

49) Defendant has contributed to and is contributing to the handling, storage, treatment, transportation, or disposal of solid waste, including offal, animal manure, and associated solids, within the meaning of RCRA.

50) Defendant's handling and disposal practices—including excessive accumulation of manure, oversaturation of soils, and discharge or placement of waste into surface waters and onto Plaintiffs' properties—present an imminent and substantial endangerment to health or the environment.

51) The agricultural waste exemption does not apply, *inter alia*, because the waste has been mismanaged and over-applied, and is not returned to the soil as fertilizer at agronomic rates pursuant to a waste management plan.

52) Plaintiffs are entitled to all relief for Defendant's violations of RCRA provided for in RCRA, 42 U.S.C. § 6972, and/or otherwise available at law or at equity in light of these violations.

## COUNT III
## RESOURCE CONSERVATION AND RECOVERY ACT
## PROHIBITION ON OPEN DUMPING
## (42 U.S.C. § 6945(a); § 6972(a)(1)(A))

53) Plaintiffs reallege and incorporate by reference the preceding paragraphs.

54) Defendant has operated and is operating an open dump by disposing of solid waste on land and in waters without meeting the criteria for sanitary landfills and without adequate containment, in violation of 42 U.S.C. § 6945(a) and implementing regulations.

55) Plaintiffs are entitled to all relief for Defendant's violations provided for in RCRA, 42 U.S.C. § 6972, and/or otherwise available at law or equity in light of these violations.

## COUNT IV
## PRIVATE NUISANCE
### Tennessee Common Law

56) Plaintiffs reallege and incorporate by reference the preceding paragraphs.

57) Defendant's conduct has caused and continues to cause unreasonable interference with Plaintiffs' use and enjoyment of their properties, including escaped wastewater, offensive odors, contamination of Whites Creek, and loss of recreational and aesthetic use.

58) The Tennessee Right to Farm Act does not excuse Defendant's actions because Defendant's operations are not conducted in accordance with generally accepted agricultural practices and are not in compliance with applicable federal and state environmental laws.

59) Even if all of the noxious and unlawful discharge of pollutants from the Hunting Lodge were to be stopped today, it would take years for the ecosystem to recover. Indeed, it is unlikely that the ecosystem will ever recover completely without intervention and biological remediation.

60) The individual Plaintiffs are entitled to damages provided by law, including full compensation for permanent or temporary nuisance as the proof may establish. All Plaintiffs are entitled to equitable relief, including declaratory and injunctive relief, to remedy and abate this continuing nuisance to the extent it is possible to do so.

## COUNT V
## UNREASONABLE INTERFERENCE WITH EASEMENT
### Tennessee Common Law

61) Plaintiffs reallege and incorporate by reference the preceding paragraphs.

62) Plaintiffs Charles and Anne Scarborough hold a valid easement across Defendant's property, including rights to use the creek bed and thoroughfare for legitimate purposes.

63) Defendant has unreasonably interfered with the easement by causing polluted water, debris, and waste to discharge onto and across the easement area and by rendering Whites Creek unusable for recreation and events, causing actual damages.

64) Plaintiffs Charles and Anne Scarborough are entitled to judgment against the Defendant in an amount sufficient to fully compensate them for these damages.

## COUNT VI
## DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)
### (Declaratory Relief Regarding Violations of Tennessee Water Quality Control Act)

65) An actual controversy exists regarding Defendant's ongoing discharges and degradation of state waters in violation of the Tennessee Water Quality Control Act (TWQCA), Tenn. Code Ann. § 69-3-101 et seq.

66) Plaintiffs are entitled to a declaration that Defendant's conduct violates TWQCA and is not protected by the Tennessee Right to Farm Act.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS PRAY:

1. That proper process issue and be served upon Defendant, requiring him to appear and answer this Complaint;

2. That this Court render a judgment finding and declaring that Defendant Norman Mitchell Kemmer II has violated and is in violation of the CWA, 33 U.S.C. § 1311(a), Tennessee NPDES rules, RCRA, 42 U.S.C. §§ 6972(a)(1)(B)), 6945(a), the Tennessee Water Quality

Control Act, and that Defendant's conduct constitutes a private nuisance and an unreasonable interference with the Scarborough Plaintiffs' easement rights;

3. That this Court enjoin the violations and any and all illegal conduct by Defendant set out and alleged above and issue preliminary and permanent injunctions compelling Defendant to (i) cease unpermitted discharges; (ii) implement effective best management practices and structural controls; (iii) develop and implement an animal waste management plan with third-party oversight; (iv) restore impacted portions of Whites Creek and Plaintiffs' properties; and (v) conduct monitoring, reporting, and verification at Defendant's expense;

4. That this Court assess civil penalties for each day of violation as authorized by law (including under 33 U.S.C. § 1319(d), as adjusted for inflation), payable to the United States Treasury, and award any other appropriate equitable relief;

5. That Plaintiffs, who are natural persons, be granted judgment for compensatory damages in such amount as the jury determines to be sufficient to fully and fairly compensate them for Defendant's violations of Plaintiffs' property rights and easement rights as a result of Defendant's negligence, recklessness, and/or intentional acts and/or omissions;

6. That Plaintiffs, who are natural persons, be granted judgment for punitive damages for Defendant's intentional and/or reckless unlawful misconduct in the amount sufficient to deter them and others from future misconduct of the type that is the subject of this Complaint.

7. That Plaintiffs be awarded their reasonable attorneys' fees, experts' fees, and costs pursuant to 33 U.S.C. § 1365(d), 42 U.S.C. § 6972(e), Tennessee law, and the Court's equitable powers;

8. That the Court retain jurisdiction to ensure compliance with the Court's decrees;

9. That the Court award such other and further relief as it deems just and proper.

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Philip N. Elbert*
Philip N. Elbert, #009430
Elizabeth S. Tipping, #023066
Andrew T. Holt, #042543
1222 Demonbreun Street, Suite 1201
Nashville, TN 37203
Tel.: (629) 250-3388
Fax: (202) 261-0072
Phil.Elbert@wbd-us.com
Liz.Tipping@wbd-us.com
Drew.Holt@wbd-us.com